**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

**RAMIJA MORALES,**

                       **Plaintiff,**

vs.                                    **Index No. 05 CV 10744 (LAK)**

**SAATCHI & SAATCHI,**                 **Trial by Jury is Demanded on all**
                       **Defendant.**          **Counts so Triable**
----------------------------------------------------------------X

Plaintiff RAMIJA MORALES, by her attorneys, LAW OFFICES OF JOSEPH M. HEPPT, of 521 Fifth Avenue, Suite 1805, New York, NY 10175 as and for her complaint against the Defendant herein, alleges the following, upon information and belief:

### PRELIMINARY STATEMENT

1. This is an action seeking declaratory relief and monetary damages for, *inter alia*, Defendant's unlawful and discriminatory sexual harassment in violation of plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et. seq. and for the violation of the duty not to discriminate on the basis of gender by the Defendant pursuant to 42 U.S.C. sec 1983. Plaintiff also seeks monetary damages for supplemental claims under New York State Human Rights Law (Executive Law, section 296 and 297 et seq.) and the Civil Rights Law of the City of New York (Title 8 of the New York City Administrative Code) for unfair discriminatory practices.

### JURISDICTIONAL ALLEGATIONS

2. This Court has jurisdiction over this case pursuant to 28 U.S.C. Sec. 1331 in that this action arises under and seeks redress for the deprivation of rights secured by the laws of the United States.

3. This Court further has jurisdiction over this case in that this action seeks relief for discrimination of the basis of gender pursuant to 42 U.S.C. Sec. 2000e et seq.

4. That Plaintiff has satisfied all statutory requirements for the bringing of the within action under 42 U.S.C. section 2000(e)(5)(f)(1) and Plaintiff has received a right to sue letter from the Equal Employment Opportunity Commission on or about September 26, 2005.

5. This action is being commenced within ninety (90) days of the issuance of said right to sue letter.

6. Venue is proper in this County in accordance with 28 U.S.C. § 1391.

**PARTIES AND RELATIONSHIPS**

7. At the time of the commencement of this action plaintiff RAMIJA MORALES was and is a female.

8. At the time of the commencement of this action, upon information and belief, Defendant SAATCHI & SAATCHI, was and still is a foreign corporation duly organized and existing under and by virtue of the laws of Delaware and authorized to do business in New York State.

9. At the time of the commencement of this action Defendant SAATCHI & SAATCHI, was and still is located at 375 Hudson Street, County, City and State of New York.

10. That Defendant SAATCHI & SAATCHI, and employees of Defendant SAATCHI & SAATCHI, whose identities are currently unknown, are subject to the legal requirements of equal employment opportunity and as specified in 42 U.S.C. Sec. 2000e et seq., as well as certain state and city civil rights laws as discussed, infra.

11. That this Court may exercise pendant jurisdiction of certain state and city law claims under 28 U.S.C. 1367 et. seq.

## ALLEGATIONS AS TO THE FACTS

12. Plaintiff was hired by the Defendant in May, 2001 as a Traffic Coordinator.

13. While she was employed by the Defendant, beginning in January 2005, Plaintiff was subjected to severe, persistent, unwelcome, and unlawful harassment by a co-worker, Michael Aylward ("Aylward") and various supervisors and managers because of her sex, female, creating a sexually hostile work environment. Plaintiff was subjected to comments and conduct such as, Aylward repeatedly staring at her breasts while talking to her, repeatedly commenting on her body and saying "you look hot," repeatedly staring at her body and licking his lips, asking her the same question over and over at a staff meeting and explaining that he just loved the sound of her voice, repeatedly winking and blowing kisses at her while passing in the hallway, repeatedly leering at Plaintiff in a rude and sexual manner, and repeatedly screaming at her at the top of his lungs and calling her a bitch when she rebuffed his advances.

14. Plaintiff objected to these severe, persistent, and unwelcome sexually offensive comments, but the comments continued. Thereafter, Plaintiff complained to her superiors about the sexually offensive comments and they too failed to act. In fact, instead of condemning the action, they apparently condoned the conduct and it continued.

15. Defendant was well aware of the emotional impact that the daily barrage of sexually offensive comments were having on the Plaintiff, yet it permitted the unwelcome and offensive behavior to continue.

16. Approximately two months after complaining to her immediate supervisor (Jabbar Jones), Aylward's supervisor (Thomas Hancock), human resources personnel (Jeriann Sohn) and the Director of Operations (Donna Garrod), Plaintiff was told that she was being transferred to a new account. When Plaintiff, together with her immediate supervisor, voiced their concern to Garrod that such a transfer would not rectify the problem since Plaintiff would still be working in close proximity to Aylward, Garrod

responded by saying, "It is what it is. Now get the fuck out of my office and I'm being serious."

17.     Shortly after being transferred to the new account, Plaintiff again approached Garrod and explained that she was still being subjected to the same inappropriate sexual conduct of Aylward, Garrod replied, "Next time he does that tell him 'Hi, how are you?'"  Plaintiff asked whether Garrod was serious and she replied, "Yes."

18.     During this time period, it was time for Plaintiff's annual performance review.  Because Mr. Jones had been Plaintiff's immediate supervisor for most of the year, he prepared Plaintiff's review.  He told Plaintiff that he gave her excellent grades in all categories.  He further told her, however, that when he brought the review to Garrod for her review and signature, she downgraded some of Plaintiff's ratings despite the fact that Garrod had only started with the agency in April.

19.     In late June 2005, Garrod informed Plaintiff that she would be reassigned to a new position outside the traffic department.  When Plaintiff asked what she would be working on, Garrod replied that Myrna James and Garrod would decide what Plaintiff's new title and responsibilities would be.  When asked why she was being moved out of the traffic department, Garrod replied that it was a direct result of Plaintiff's complaints regarding the harassment by Aylward.

20.     The new position that Plaintiff was transferred to involved her sitting at a desk and calling publications all day long with no contact with anyone else in the agency. When she asked Garrod whether she could transfer back into the traffic department, Garrod replied, "Becky stop being high maintenance."  When Plaintiff explained that she was not being high maintenance but that she missed interacting with other people during the day, Garrod replied that she felt it was best for Plaintiff not to interact with people directly.

21. Shortly after being reassigned to her new position, Plaintiff asked Myrna James, her then immediate supervisor, what job number to bill her time to. James replied that she had to check with Garrod, who told James to have Plaintiff bill her time to the Administrative job number. James replied to Garrod, "No, that is a non-billable job and if finance finds out that this position that was created is a no-profit and Becky is billing 40 hours per week, they will take the position away and she will be let go."

22. On Thursday, July 28, Plaintiff informed Garrod that she would be out of the office on Friday, July 29. On August 1, James confronted plaintiff and asked why she had done a "No Call, No Show" on Friday, July 29. When Plaintiff asked James what she was talking about, James explained that Garrod had called James at home on that Friday and asked whether James had received a voice mail from Plaintiff. When James stated that she had not, Garrod stated that Plaintiff had done a "No Call, No Show." On August 2, Plaintiff asked Garrod why she had told James that Plaintiff had done a "No Call, No Show" when Plaintiff had specifically told Garrod that she would be out of the office on that Friday. Garrod replied, "You and I have nothing to discuss. Now, get the fuck out of my office." Garrod slammed her office door behind Plaintiff.

23. As a result of Defendant's failure to stop the severe, persistent, unwelcome and unlawful harassment by Plaintiff's co-worker, the working conditions became so intolerable that Plaintiff was compelled to resign her employment with the Defendant on August 9, 2005.

24. As a result of the aforementioned conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, and severe stress and anxiety, emotional pain and anguish, humiliation, and embarrassment, all of which have had and continue to have a negative overall impact on her personal, family, and professional life as well as her physical and emotional well being.

## COUNT ONE
### Sexually Hostile Work Environment under Title VII of the Civil Rights Act of 1964 as Amended and the Civil Rights Act of 1991

25. Plaintiff repeats and reiterates each and every allegation of Paragraphs 1 through 24 of this Complaint as if specifically alleged herein.

26. Through the above-described acts and conduct, Defendant has subjected Plaintiff to discrimination based on her sex, female, by creating a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

27. Not only has Defendant discriminated against Plaintiff due to sex, female, by creating a sexually hostile work environment, but Defendant's actions in condoning and participating in this behavior compelled Plaintiff to resign her employment with the Defendant giving rise to a claim of constructive discharge.

28. Defendant engaged in the above-described discriminatory acts and conduct against Plaintiff with malice and/or reckless indifference toward Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

29. Plaintiff has suffered, is now suffering, and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant's conduct.

## COUNT TWO
### Retaliation Under Title VII of the Civil Rights Act of 1964 as Amended and the Civil Rights Act of 1991

30. Plaintiff repeats and reiterates each and every allegation of Paragraphs 1 through 29 of this Complaint as if specifically alleged herein.

31. Through the above-described acts and conduct, Defendant retaliated against Plaintiff for her engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

32.     Defendant engaged in the above-described retaliatory acts and conduct against Plaintiff with malice and/or reckless indifference toward Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991.

33.     Plaintiff has suffered, is now suffering, and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant's conduct.

### COUNT THREE
### VIOLATIONS UNDER SECTIONS 296 AND 297 OF THE EXECUTIVE LAW OF THE STATE OF NEW YORK AND TITLE 8 OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

34.     Plaintiff repeats and reiterates each and every allegation of Paragraphs 1 through 33 of this Complaint as if specifically alleged herein.

35.     By its acts and omissions described above, Defendant, either directly or through its agents, servants, trustees and/or employees unlawfully discriminated against the Plaintiff on the basis of her gender (female), denied Plaintiff equal opportunity to employment, wrongfully denying Plaintiff equal opportunity of employment and a non-hostile work environment by their unlawful acts of discrimination, discriminated against Plaintiff by creating a hostile work environment, engaged in conduct that unreasonably interfered with Plaintiff's work performance, engaged in conduct that created a hostile and offensive working environment, engaged in unwelcome and offensive sexual conduct directed toward Plaintiff, took punitive actions against Plaintiff in retaliation for objecting to said unlawful and discriminatory behavior, all of the foregoing in violation of the New York State Human Rights Law, (Executive Law Sec. 296, et seq.), and the Civil Rights Law of the City of New York, (Title 8 of New York City Administrative Code).

36.     That the discrimination complained of herein was unwelcome.

37.     That the discrimination complained of herein was of a sexual nature.

38. That the discrimination complained of herein affected a term, condition, or privilege of plaintiffs' employment.

39. That by reason of the foregoing, Plaintiff was caused damage to her business reputation, and loss of earnings and was caused to suffer certain serious, severe and permanent physical and non-physical injuries and conditions, and have been caused to be rendered sick, sore and lame and to suffer emotional distress, mental injury and suffering, loss of employment, loss of past and future earnings, damage to business reputation, and have otherwise been caused to be damaged thereby.

40. Plaintiff has suffered, is now suffering, and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant's conduct.

## COUNT FOUR
## Negligent Hiring and Retention

41. Plaintiff repeats and reiterates each and every allegation of Paragraphs 1 through 40 of this Complaint as if specifically alleged herein.

42. That the Defendant did employ and continued to employ Aylward, and other employees of SAATCHI & SAATCHI, whose identities are currently unknown, despite its actual knowledge of the sexist attitudes and views of said employees, and did condone, ratify and otherwise encourage said sexist and discriminatory employment practices by retaining said employees and did actually know of such acts of inappropriate and offensive behavior by its employees making them unsuitable for the positions in which they were employed.

43. That the Defendant's employees, Aylward, and other employees of SAATCHI & SAATCHI, whose identities are currently unknown, lacked the qualifications, training, temperament, abilities, and suitability for the positions in which they were employed.

44. That the Defendant knew or should have known of the sexist attitudes of Aylward and of his offensive and discriminatory policies and practices, and generally of his unsuitability for the positions for which he was employed.

45. That the Defendant acted in a negligent way by hiring and retaining Aylward, and other employees of SAATCHI & SAATCHI, whose identities are currently unknown, after it knew or should have known of their extreme and vile sexist attitudes and of their aggressive nature of imposing their sexist attitudes upon others, including the Plaintiff that made them unsuitable for the position in which they were employed.

46. That the Defendant acted in negligent way by retaining Aylward, and other employees SAATCHI & SAATCHI, whose identities are currently unknown, after they knew or should have known of their sexist attitudes and vile and sexist behavior and their discriminatory employment practices that made them unsuitable for the position in which they were employed.

47. That Defendant's conduct was a proximate cause of the injuries suffered by plaintiff and in violation of plaintiff's civil rights and human rights and all damages concomitant thereto.

48. Plaintiff has suffered, is now suffering, and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant's conduct.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1. On the First Count:

   a. Declaring Defendant's conduct to be in violation of Plaintiff's civil rights as secured under Title VII of the Civil Rights Act of 1964;

   b. Awarding Plaintiff appropriate compensatory and punitive damages;

   c. Awarding Plaintiff lost wages and benefits;

   d. Awarding Plaintiff her costs and attorneys' fees; and

  e. Awarding Plaintiff such other and further relief as may be deemed just and proper.

2. On the Second Count:

  a. Declaring Defendant's conduct to be in violation of Plaintiff's civil rights as secured under Title VII of the Civil Rights Act of 1964;

  b. Awarding Plaintiff appropriate compensatory and punitive damages;

  c. Awarding Plaintiff lost wages and benefits;

  d. Awarding Plaintiff her costs and attorneys' fees; and

  e. Awarding Plaintiff such other and further relief as may be deemed just and proper.

3. On the Third Count:

  a. Declaring Defendant's conduct to be in violation of Plaintiff's civil rights as secured under the Human Rights Law of the State of New York and the Civil Rights Law of the City of New York;

  b. Awarding Plaintiff appropriate compensatory and punitive damages;

  c. Awarding Plaintiff lost wages and benefits;

  d. Awarding Plaintiff her costs and attorneys' fees; and

  e. Awarding Plaintiff such other and further relief as may be deemed just and proper.

4. On the Fourth Count:

  A. Declaring that the Defendant was negligent in hiring and retaining Aylward and other employees after it knew or should have known of their sexist attitudes and vile and sexist behavior and their discriminatory employment practices that made them unsuitable for the position in which they were employed..

  B. an award of monetary damages in amount to be determined at trial and Twenty Five Million ($25,000,000.00) Dollars in punitive damages, and

      C.      an award of the costs of this action, interest, disbursements and attorney's fees to counsel for Plaintiff.

**DEMAND FOR A JURY TRIAL**

Plaintiff, by and through her undersigned counsel, herewith demands a trial by jury of six persons on all issues in this case.

Dated: New York, New York
       December 19, 2005

THE LAW OFFICES OF
JOSEPH M. HEPPT

_____/S_____
Joseph M. Heppt (JH-4974)

521 Fifth Avenue, Suite 1805
New York, New York 10175
(212) 973-0839

*Attorney for Plaintiff*